JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUBEN MARTINEZ, FRANCISCO DIAZ,
MARTIN RAQUEC,

        Plaintiffs,

  - against -

IANO CORP. d/b/a ACQUA RESTAURANT,
SEBASTIANO CAPPITTA

        Defendants.

---

Case No. 13 CIV 4336

ECF Case

COMPLAINT



      Plaintiffs Ruben Martinez, Francisco Diaz, and Martin Raquec (collectively, "Plaintiffs"), by their undersigned attorneys, make the following allegations in support of their Complaint against Defendants Iano Corp. and Sebastiano Cappitta (collectively, "Defendants"):

## PRELIMINARY STATEMENT

    1.    Plaintiffs are current and former employees of Acqua Restaurant ("Acqua"), an Italian restaurant owned and operated by Defendant Sebastiano Cappitta and located at 718 Amsterdam Avenue in Manhattan, New York.

    2.    Plaintiffs bring this action to recover damages arising out of their employment at Acqua.

    3.    Acqua is operated by Iano Corp., a New York corporation with Sebastiano Cappitta as its CEO, President, and sole shareholder.

    4.    Throughout the course of their employment, Plaintiffs regularly worked more than fifty hours each week for wages that fell below the legal minimum wage and without receiving the overtime premiums required by law. In addition, Defendants failed to comply with spread-of-hours requirements under New York state law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), 29 U.S.C. § 216, and 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Plaintiffs' New York state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiffs*

8. Plaintiff Ruben Martinez was employed by the Defendants as a salad maker, a food preparer, and a kitchen worker at Acqua from approximately May 2009 until October 2012.

9. Plaintiff Francisco Diaz has been employed by the Defendants as a dishwasher and a food preparer at Acqua since approximately May 2010.

10. Plaintiff Martin Raquec was employed by the Defendants as a delivery worker at Acqua from approximately October 2011 until July 2012.

### *Defendants*

11. Defendant Iano Corp. is a corporation organized and existing under the laws of the State of New York.

12. Upon information and belief, Defendant Iano Corp. has a principal executive office at 110 W. 90th Street, Apt. 2G, New York, New York 10024.

13. Upon information and belief, at all times relevant to this action, Iano Corp. has operated and done business as Acqua Restaurant.

2

14. At all times relevant to this action, Acqua has been located at 718 Amsterdam Avenue, New York, New York 10025.

15. At all times relevant to this action, Acqua has served food to customers on the premises and provided delivery service.

16. At all times relevant to this action, Acqua has been a "restaurant" within the meaning of the New York Labor Law ("NYLL"). 12 N.Y.C.R.R. 146-3.1(b).

17. Upon information and belief, Defendant Sebastiano Cappitta has owned and operated Acqua at all times that Plaintiffs were employed at Acqua.

18. Upon information and belief, Defendant Sebastiano Cappitta was the sole owner of Iano Corp., d/b/a Acqua, at all times relevant to this action.

19. Upon information and belief, Defendant Sebastiano Cappitta was the CEO and President of Iano Corp., d/b/a Acqua, at all times relevant to this action.

20. Upon information and belief, at all times relevant to this action, Defendant Sebastiano Cappitta was involved in the daily operation of Acqua and was responsible for hiring and firing employees and maintaining employment records.

21. Upon information and belief, at all times relevant to this action, Defendant Sebastiano Cappitta had the power to hire and fire Plaintiffs.

22. Upon information and belief, at all times relevant to this action, Defendant Sebastiano Cappitta controlled the terms and conditions of Plaintiffs' employment.

23. Upon information and belief, at all times relevant to this action, Defendant Sebastiano Cappitta either set Plaintiffs' work schedules or had someone do it on his behalf.

24. Upon information and belief, at all times relevant to this action, Defendant Sebastiano Cappitta determined the rate and method of compensation provided to Plaintiffs.

25. At all times relevant to this action, Defendant Sebastiano Cappitta was Plaintiffs' employer within the meaning of the FLSA and NYLL.

26. Upon information and belief, at all times relevant to the allegations in this Complaint, Iano Corp. has been an enterprise engaged in interstate commerce within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person; and (ii) has and has had an annual gross volume of sales of not less than $500,000.00.

## FACTS

27. Plaintiffs were each employed at Acqua beginning on various dates over approximately the past four years. At all times relevant to this action, Plaintiffs were Defendants' employees within the meaning of the FLSA and NYLL. 29 U.S.C. § 203(e); NYLL §§ 2(5), 190(2) and 651(5).

### Minimum Wage, Overtime, and Spread of Hours

28. Both the FLSA and NYLL require that employees be paid a minimum wage. 29 U.S.C. § 206; NYLL § 652.

29. NYLL § 652 required employees to be paid a minimum wage of at least $7.15 per hour between January 1, 2007 and July 23, 2009, and a minimum wage of $7.25 per hour from July 24, 2009, onwards.

30. 29 U.S.C. § 206 required employees to be paid a minimum wage of at least $6.55 per hour between July 24, 2008, and July 23, 2009, and a minimum wage of at least $7.25 per hour from July 24, 2009, onwards.

31. The FLSA and New York State Department of Labor Regulations require that Defendants pay an overtime rate of one-and-a-half times the regular rate of pay for each hour of work over forty hours a week. 29 U.S.C. § 207; 12 N.Y.C.R.R. § 146-1.4.[1]

32. The "spread of hours" is the number of hours from the time that an employee started working on a particular day until the time that he or she stopped working for the day. 12 N.Y.C.R.R. § 146-1.6[2] provides that an employer is required to pay an employee an extra hour of pay at the full minimum wage, without allowances, for each day in which the employee's spread of hours exceeds ten.

### Ruben Martinez

33. Plaintiff Ruben Martinez ("Martinez") worked at Acqua from May 2009 through October 2012.

34. For the entirety of his employment at Acqua, Martinez normally worked six days a week for at least nine hours a day.

35. From approximately May 2009 through November 2009, Martinez worked as a salad maker. His primary responsibility was preparing salads, but he also prepared other types of food.

36. While employed as a salad maker, Martinez normally worked approximately nine-and-a-half to ten hours a day, six days a week, for an initial fixed wage of $400 per week. His pay increased to a fixed wage of $450 a week in approximately June 2009.

37. From approximately November 2009 through October 2012, Martinez worked as a kitchen worker. His primary responsibilities were cleaning the dining room and restaurant

---

[1] Prior to January 1, 2011, this provision was located at 12 N.Y.C.R.R. § 137-1.3.

[2] Prior to January 1, 2011, these provisions were located at 12 N.Y.C.R.R. § 137-3.11 and 12 N.Y.C.R.R. § 137-1.7.

5

basement; unloading deliveries; transporting ingredients and firewood to Defendant Cappitta's other restaurants, Bettola and Buca; and moving and storing heavy stone tables.

38. As a kitchen worker, Martinez normally worked six days a week with hours ranging from nine to fifteen hours a day. Martinez was paid a fixed wage of $540 a week, regardless of the number of hours he worked in a week.

39. For one week in or around March 2010, Martinez worked an additional daily shift as a pizza-maker. During that week, he worked approximately fifteen hours a day for seven days and was paid $690 for the week.

40. Martinez also was required to travel to and clean Defendant Cappitta's personal apartment on several occasions. He sometimes received an additional $20 for performing these services. Martinez also was required to periodically wash Defendant Cappitta's personal car. He received no additional compensation for performing that service.

41. Neither Defendants nor anyone acting on their behalf ever informed Martinez that his pay was calculated based on an hourly pay rate.

42. At times during the course of his employment, Martinez was paid less than the applicable New York and federal minimum wage.

43. Neither Defendants nor anyone acting on their behalf notified Martinez of the minimum wage provisions of the FLSA and the NYLL.

44. Despite the fact that Martinez regularly worked in excess of forty hours a week, Defendants never paid Martinez overtime compensation as required by both the FLSA and New York State Department of Labor Regulations.

45. Martinez routinely worked a "spread of hours" greater than ten hours per day.

46. Despite the fact that Martinez routinely worked a "spread of hours" greater than ten hours per day, Defendants did not pay him any additional compensation as required by New York State Department of Labor Regulations.

47. Defendants' failure to pay minimum wage, overtime, and spread-of-hours was willful.

### Francisco Diaz

48. Plaintiff Francisco Diaz ("Diaz") began working at Acqua in approximately May 2010. As of the commencement of this action, Diaz is still working at Acqua.

49. Diaz worked as a dishwasher for at least some time in the course of his employment at Acqua.

50. Diaz worked as a food preparer for at least some time in the course of his employment at Acqua.

51. Diaz normally worked 6 days per week throughout the time he worked for Acqua up until the filing of this Complaint.

52. Diaz normally worked from approximately 1:30 p.m. until after closing time, which, depending on the day and number of customers, was anywhere between 11:30 p.m. and 12:00 a.m.

53. Acqua paid Diaz a fixed wage of $360 a week from his hiring in approximately May 2010 until approximately May 2011.

54. Acqua paid Diaz a fixed wage of $390 a week from approximately May 2011 until approximately May 2012.

55. On or about May 2012, Diaz received a pay increase resulting in total weekly compensation of $400 from approximately May 2012 until the present.

56. Neither Defendants nor anyone acting on their behalf ever informed Diaz that his pay was calculated based on an hourly pay rate.

57. Defendants failed to pay Diaz the applicable minimum wage under both the FLSA and the NYLL throughout the time he worked at Acqua.

58. Despite routinely working more than 40 hours a week, Defendants never paid Diaz overtime compensation as required by both the FLSA and New York State Department of Labor Regulations.

59. Diaz routinely worked a "spread of hours" greater than ten hours per day.

60. Despite the fact that Diaz routinely worked a "spread of hours" greater than ten hours per day, Defendants did not pay him any additional compensation as required by New York State Department of Labor Regulations.

61. Defendants' failure to pay minimum wage, overtime, and spread-of-hours was willful.

### Martin Raquec

62. Plaintiff Martin Raquec ("Raquec") was employed by Acqua as a delivery person from October 2011 until July 2012.

63. Throughout the time he worked at Acqua, Raquec normally worked seven hours a day, six days a week.

64. From October 2011 through approximately June 2012, Raquec was paid a fixed wage of $120 a week.

65. For approximately two to three weeks before the end of his employment at Acqua in July 2012, Raquec was paid a fixed wage of $150 a week.

66. Throughout the time he worked at Acqua, Raquec's primary job responsibility was delivering food orders by bicycle, though he also assembled pizza boxes, grated cheese,

8

carried dishes from the restaurant's basement to the kitchen, and transported wine and cheese by bicycle to Defendant Cappitta's other restaurants.

67. Raquec used his own money to perform maintenance and repairs on the bicycle he used for his deliveries. He was not reimbursed for these expenses.

68. Neither Defendants nor anyone acting on their behalf ever informed Raquec that his pay was calculated based on an hourly pay rate.

69. Neither Defendants nor anyone acting on their behalf ever provided a notice of pay rate to Raquec in accordance with NYLL § 195(1).

70. Defendants failed to pay Raquec the applicable minimum wage under both the FLSA and the NYLL throughout the time he worked at Acqua.

71. Despite the fact that Raquec regularly worked in excess of forty hours a week, Defendants never paid Raquec overtime compensation as required by both the FLSA and New York State Department of Labor Regulations.

72. Defendants did not notify Raquec of the minimum wage provisions of the FLSA.

73. Defendants' failure to pay minimum wage and overtime was willful.

### Notice Requirements and Record Keeping

74. Upon information and belief, throughout Plaintiffs' employment at Acqua, Defendants failed to maintain a workplace display—in any language, in a place accessible to employees and in a visually conspicuous manner—of the notices of employee rights to receive minimum wage or overtime compensation as required by the FLSA and New York State Department of Labor Regulations.

75. At all times relevant to this action, Defendants compensated Plaintiffs by paying them in cash without an accompanying pay stub, receipt, or other similar document.

76. At all times relevant to this action, neither Defendants nor anyone acting on their behalf provided Plaintiffs with wage statements, or any other similar document, at the time they were paid wages in accordance with NYLL §§ 195(3) and 198(1-d).

77. Upon information and belief, at all times relevant to this action, neither Defendants nor anyone acting on their behalf recorded the amount of time Plaintiffs worked.

78. Upon information and belief, Acqua posted a work schedule in the restaurant that did not correspond to Plaintiffs' actual work schedules.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
#### Minimum Wage Under the FLSA
#### (All Plaintiffs)

79. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

80. At all times relevant to this action, Plaintiffs were employed by the Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

81. At all times relevant to this action, Plaintiffs were engaged in commerce or the production of goods for commerce, or were employed by an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, specifically 29 U.S.C. § 206(a).

82. At all times relevant to this action, Plaintiffs were entitled to the protections of the FLSA, 29 U.S.C. §§ 206 and 207.

83. Defendants failed to pay Plaintiffs the applicable minimum hourly wage for all hours worked in violation of the FLSA, 29 U.S.C. § 206(a).

84. Defendants' violations of the FLSA, as described herein, have been willful.

85. Accordingly, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including post-judgment interest, pursuant to the FLSA, 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### Overtime Wages Under the FLSA
### (All Plaintiffs)

86. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

87. At all times relevant to this action, Plaintiffs were employed by the Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

88. At all times relevant to this action, Plaintiffs were engaged in commerce or the production of goods for commerce, or were employed by an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, specifically 29 U.S.C. § 207(a).

89. At all times relevant to this action, Plaintiffs were entitled to the protections of the FLSA, 29 U.S.C. §§ 206 and 207.

90. Defendants failed to pay Plaintiffs overtime wages at a rate at least one and one half times the regular rate of pay for each hour worked in excess of forty hours per workweek, or at a minimum, one and a half times the minimum wage, in violation of the FLSA, 29 U.S.C. § 207.

91. Defendants' failure to pay Plaintiffs their overtime wages was willful.

92. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an equal amount in the form

of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including post-judgment interest, pursuant to the FLSA, 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### Minimum Wages Under NYLL
### (All Plaintiffs)

93. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

94. At all times relevant to this action, Plaintiffs were employed by the Defendants within the meaning of NYLL §§ 2 and 651.

95. At all times relevant to this action, Defendants were employers within the meaning of NYLL §§ 2, 190, and 651.

96. Defendants failed to pay Plaintiffs at the applicable minimum hourly wage, in violation of the New York Minimum Wage Act, specifically NYLL § 652 and applicable regulations.

97. Defendants' failure to pay Plaintiffs the applicable minimum hourly wage was willful.

98. Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages, liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre- and post-judgment interest, pursuant to NYLL § 663(1).

### FOURTH CAUSE OF ACTION
### Overtime Wages Under NYLL
### (All Plaintiffs)

99. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

100. At all times relevant to this action, Plaintiffs were employed by the Defendants within the meaning of NYLL §§ 2 and 651.

101. Defendants failed to pay Plaintiffs overtime wages at rates at least one and one half times the regular rate of pay for each hour worked in excess of forty hours per week, or at a minimum, one and one-half times the minimum wage in violation of the NYLL and accompanying regulations.

102. Defendants' failure to pay Plaintiffs overtime wages was willful.

103. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages, liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre- and post-judgment interest, pursuant to NYLL § 663(1).

### FIFTH CAUSE OF ACTION
### Spread-of-Hours Pay Under NYLL
### (Plaintiffs Ruben Martinez and Francisco Diaz)

104. Plaintiffs Martinez and Diaz reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

105. At all times relevant to this action, Plaintiffs Martinez and Diaz were employed by the Defendants within the meaning of NYLL §§ 2 and 651.

106. Under New York Labor Law, an employee is entitled to an extra hour of wages for any day when the employee's "spread of hours" exceeds 10 hours. 12 N.Y.C.R.R. § 137-1.7 (pre-2011); 12 N.Y.C.R.R. § 146-1.6 (2011). "Spread of hours" is defined as "the interval between the beginning and end of the workday." *Id.*

107. Plaintiffs Martinez and Diaz regularly worked a spread of hours of at least ten hours per day during their employment.

108. Defendants had knowledge that Plaintiffs Martinez and Diaz worked a spread of hours exceeding ten hours per day.

109. Defendants failed to pay Plaintiffs Martinez and Diaz spread of hours wages of an additional hour of pay at the minimum wage for each day Plaintiffs Martinez and Diaz had a spread of hours in excess of ten hours per day, in violation of New York Labor Law.

110. Defendants' failure to pay Plaintiffs Martinez and Diaz spread-of-hours wages was willful.

111. Due to Defendants' NYLL violations, Plaintiffs Martinez and Diaz are entitled to recover from Defendants, jointly and severally, damages in the amount of unpaid spread-of-hours wages, liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre- and postjudgment interest, pursuant to NYLL § 663(1).

## SIXTH CAUSE OF ACTION
### Failure to Provide Wage Statements
### (All Plaintiffs)

112. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

113. Under New York Law, an employer is required to provide the employees with, *inter alia*, written notice of their rate of pay and a statement of their wages concurrent with the payment of their wages. NYLL §§ 195(3) and 198(1-d).

114. Defendants failed to provide Plaintiffs with the required written notice of their rate of pay or a statement of their wages concurrent with the payment of their wages.

115. Accordingly, Plaintiffs are entitled to recover from Defendants, jointly and severally, $100 for each week of employment in which they did not receive the required wage statement subsequent to the effective date of the Wage Theft Prevention Act ("WTPA"), up to a

total of $2500 for each Plaintiff, as well as reasonable attorneys' fees and costs of the action, and pre-judgment interest.

### SEVENTH CAUSE OF ACTION
### Failure to Provide Notice of Pay Rate
### (Plaintiff Martin Raquec)

116. Plaintiff Raquec realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

117. Under the WTPA, which came into effect on April 13, 2011, an employer is required to provide employee with written notice of, *inter alia*, their regular rate of pay and basis thereof, within the first ten days of their employment.

118. Acqua hired Plaintiff Raquec in October 2011, after the WTPA was in effect.

119. Acqua did not provide Plaintiff Raquec with written notice of his regular rate of pay and basis thereof in accordance with NYLL § 195(1) within the first ten days of employment or anytime thereafter.

120. Accordingly, Plaintiff Raquec is entitled to recover $50 per week up to a total of $2500 for each week of employment subsequent to the amended provisions of the WTPA as well as costs and reasonable attorney's fees. NYLL § 198(1-b).

### PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that judgment be granted:

a) Declaring Defendants' conduct complained of herein to be in violation of the FLSA, New York Minimum Wage Act, the NYLL and their respective regulations;

b) Awarding Plaintiffs unpaid minimum wages, where applicable;

c) Awarding Plaintiffs unpaid overtime wages;

d) Awarding Plaintiffs additional pay for all spread-of-hours violations;

e) Awarding Plaintiffs liquidated damages pursuant to 29 U.S.C. § 216(b);

  f)  Awarding Plaintiffs liquidated damages pursuant to NYLL §§ 198(1-a) and 663(1);

  g)  Awarding Plaintiffs statutory damages pursuant to NYLL §§ 198(1-b) and (1-d);

  h)  Awarding Plaintiffs pre- and post-judgment interest, where applicable; and

  i)  Awarding Plaintiffs the costs of this action, together with reasonable attorneys' fees, and such other and further relief as this Court deems necessary and proper.

Dated: June 21, 2013

William T. Vuk
william.vuk@kirkland.com
Michael Lavine
michael.lavine@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

David Colodny
dcolodny@urbanjustice.org
URBAN JUSTICE CENTER
123 William Street, 16th Floor
New York, New York 10038
(646) 602-5600

*Attorneys for Plaintiffs Ruben Martinez, Francisco Diaz, and Martin Raquec*